UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PATRICIA PULASKI, | : |
| | : |
| Plaintiff, | : NO. 3:04CV2015 (MRK) |
| | : |
| v. | : |
| | : |
| STRATFORD BOARD OF EDUCATION, | : |
| | : |
| | : |
| Defendant. | : |

**MEMORANDUM OF DECISION**

In this case, Plaintiff Patricia Pulaski sues the Stratford Board of Education ("School Board") under 42 U.S.C. § 1983 for violating her due process rights. In particular, Ms. Pulaski claims that she was denied due process of law when her employment with the School Board was terminated without notice or an opportunity to be heard. She also asserts a state law claim for breach of the alleged contractual terms of her employment. The School Board has moved for summary judgment [doc. # 29], a motion the Court now grants.

**I.**

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome if the substantive law renders them so. *Andersen v. Liberty Lobby, Inc.*, 477 U.S.

1

242, 251-52 (1986). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials," but must rather "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court must draw all ambiguities and inferences in favor of the non-moving party. *See Andersen*, 477 U.S. at 255. However, to defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Andersen*, 477 U.S. at 249-50.

## II.

The following forms the factual background to Plaintiff's claims in this case. As required on motion for summary judgment, the Court recites the facts in the light most favorable to Ms. Pulaski.

Plaintiff Patricia Pulaski was employed as a human resources assistant, a non-union position, with the Stratford Board of Education from July 1993 to June 30, 2004. Def.'s Local Rule 56(a)1 Statement [doc. # 29-2] ¶¶ 4, 8. For the entire time that Ms. Pulaski performed her job, she did so satisfactorily, with no disciplinary problems or issues. *Id.* ¶ 11. Irene Cornish became the new Superintendent of Schools in Stratford in January 2004. *Id.* ¶ 6. The Superintendent is responsible for, among other things, the school system's annual budget. *See id.* ¶ 12. Shortly after arriving in Stratford, Superintendent Cornish became aware that the school system faced significant financial issues, and she informed her staff that budget cuts were required and that there might be some reorganization or restructuring of the administrative staff that could result in the elimination or re-

2

shuffling of jobs. *Id.* ¶ 14. Superintendent Cornish ultimately concluded in the spring of 2004, that the school system needed to cut approximately $1.372 million from its budget to meet financial constraints, *id.* ¶ 17, and that a number of positions in the administrative staff would have to be eliminated or reorganized, including the human resources ("HR") secretary position (held by Ms. JoAnn Perkowski) and the HR assistant position (held by Ms. Pulaski), *id.* ¶¶ 23, 26. The budget, approved by the School Board, also created the new position of "HR associate." *See id.* ¶ 26. The School Board claims that the new position of HR associate was a consolidation of the former HR secretary and HR assistant positions.

  Ms. Pulaski first learned through a rumor on June 3, 2004, that her job would be eliminated. *Id.* ¶ 31. On that day, her supervisor, Denise Gagne, confirmed the rumor and told Ms. Pulaski and Ms. Perkowski that they would be laid off as of June 30, 2004. *Id.* ¶ 32. According to the School Board, the new position of HR associate required computer skills and educational requirements, which Ms. Pulaski does not possess. Ms. Pulaski denies that the new position truly required these attributes. At Ms. Pulaski's request, she met the next day, June 4, with Superintendent Cornish, who explained that Ms. Pulaski's position was being eliminated as part of the budget cutting. *Id.* ¶ 35. At this meeting with Superintendent Cornish, Ms. Pulaski did not claim that the elimination of her position for budgetary reasons was pretextual, nor did she request a hearing at that meeting or at any time before or after her termination on June 30, 2004. Pl's Mem. in Opp. to Def's Mot. For Summ. Judg. [doc. # 33] at 4 ("The plaintiff did not openly confront the superintendent of schools or Gagne with her disbelief in the reasons that they communicated to her regarding her dismissal."); *see id.* at 27 n.6 ("[S]he did not specifically assert that the fiscal reasons for eliminating her position were a sham . . . ."); Pulaski Deposition [doc. # 29-3] at 24 ("Q. Did you ever request any kind of hearing

on the elimination of your job from anyone employed by the Stratford Board of Education? . . . A. Not really other than my conversation with Irene [Cornish] the next day.").

Ms. Pulaski later received a letter from Ms. Gagne confirming her termination as of June 4. Def.'s Local Rule 56(a)1 Statement [doc. # 29-2] ¶ 38.  Her last day of work was June 8, 2004, though she was paid through June 30, 2004. *Id.* ¶ 37. Three other non-union employees whose job positions were not funded in the school budget were also laid off as of June 30, 2004. *Id.* ¶ 40.

In this action, Ms. Pulaski asserts that her position was eliminated and replaced with a different position so that her supervisor, Ms. Gagne, could hire Laura Locke, a friend of Ms. Gagne's. Pl.'s Rule 56(a)2 Statement [doc. # 33] ¶¶ A26.  Ms. Locke was the only person Ms. Gagne personally called about the HR associate position. *Id.* ¶ B2. Ms. Pulaski claims that the new "HR associate" position has all the same responsibilities as her former position as "HR assistant" and that there is no reason to require a college associate degree for the HR associate position. *See id.* ¶ B4. Moreover, Ms. Pulaski says, only five positions were terminated from the entire school district in May 2004, *id.* at 31, and that, while the School Board claims that these cuts saved the school system a total of $87,000, Ms. Pulaski alleges that this amount ignores $50,000 in salary costs for new positions that replaced the former positions, *id.* at 32. Thus, Ms. Pulaski asserts that the savings from the budget cuts were negligible. For purposes of resolving the present motion, the Court will assume the truth of Ms. Pulaski's assertions.

## III.

Ms. Pulaski's federal claim is straightforward. She asserts that she had a property interest in her position because, although Ms. Pulaski held a non-union position, she claims that the School Board extended the provisions of the union contract to all employees, including the requirement that

"all . . . discharges shall be for just and sufficient cause." Pl's Mem. in Opp. to Def's Mot. For Summ. Judg. [doc. # 33] at 2. Ms. Pulaski argues that because she held a property interest in her position, under the Due Process Clause of the Fourteenth Amendment, the School Board was required to give her either a pre-termination or post-termination hearing. She argues that because it gave her neither a pre- or post-termination hearing, the School Board violated her constitutional rights, and therefore she is entitled to relief under 42 U.S.C. § 1983. The School Board assumes (for the purpose of this motion) that Ms. Pulaski had a protected property interest in her continued employment, but contends that she was given all the process she was due.

**Pretermination Hearing.** Ms. Pulaski's due process complaint about the failure to provide her with a pre-termination hearing is governed by a directly applicable decision of the Second Circuit, *Dwyer v. Regan*, 777 F.2d 825 (2d Cir. 1985). In that case, the employer claimed, as here, that the plaintiff's job had been eliminated due to budgetary constraints. The plaintiff alleged, as here, that in fact his job had been "reconstituted" in the hands of a different employee, and that the employer had used the "budget constraints" rationale as a pretext to eliminate him. *Id.* at 828. Relying on *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), the Second Circuit observed initially that "as a general matter the removal of a tenured employee from his position requires some kind of preremoval hearing" and that a state employer could not avoid its obligation to provide a hearing by engaging in a sham or pretextual elimination of the employee's position. *Dwyer*, 777 F.2d at 831. However, the Second Circuit was not persuaded that a state employer has an obligation to "routinely" provide hearings whenever it eliminates or consolidates workforce positions. *See, e.g.*, *Matthews v. Eldridge*, 424 U.S. 319, 344 (1976) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."). Instead, a pre-

termination hearing is required only when, first, the employee alleges that the reduction in force was pretextual and second, the employee demonstrates that she timely requested a pre-termination hearing. Thus, the court held as follows:

> A state may well, from time to time, decide to make its operations more efficient by abolishing or consolidating positions, and we are not persuaded that the state must routinely provide hearings for employees whose positions are targeted for elimination whenever the state adopts such efficiency measures. Where, however, the state has a due process obligation to provide a hearing prior to removing an employee from an ongoing position, and an employee who has received notice that his position is to be eliminated *protests that notice and contends that it is but a sham and pretext for the deprivation of his property right*, the state must be prepared to grant the employee some kind of hearing prior to the termination of his employment.
>
> Further, we think that, in the context of an assertion that the actions announced by a state agency are a sham or a pretext designed to achieve some impermissible goal, due process requires that the pretermination hearing, *assuming one has been requested*, be held before a fact-finder other than the agency undertaking the challenged action. . . .
>
> We do not believe the requirements that a pretermination hearing on the claim of sham, be provided *if one is requested*, . . . will detract from the state's ability to adopt bona fide efficiency measures.

*Dwyer*, 777 F.2d at 833 (emphasis added).

The court in *Dwyer* remanded the case to the district court because it was unclear whether Mr. Dwyer had requested a pretermination hearing. *See id.* at 834. The court emphasized that since "we have rejected here the proposition that a state must routinely provide pretermination hearings for employees whose positions are targeted for elimination and have held only that it must provide such hearings when requested, we conclude that *if Dwyer cannot show that he made a timely request for a pretermination hearing, he is not entitled to recover for the failure to receive such a hearing*." *Id.* at 833 (emphasis added). *See also Dworkin v. City of N.Y.*, No. 95 Civ. 10261, 1996 WL 673815, at *3 (S.D.N.Y. Nov. 20, 1996) (holding that even if plaintiff was constitutionally entitled to a

6

pretermination hearing, any need for the hearing was obviated because "it is clear that plaintiff never requested such a hearing, as required in *Dwyer*"); *id.* ("It is clear that the employee bears the responsibility to request such a pretermination hearing."); *cf. Cifarelli v. Vill. of Babylon*, 894 F. Supp. 614, 621 (E.D.N.Y. 1995) ("In *Dwyer*, the Second Circuit unmistakably obligated the employee to initiate whatever procedural mechanisms the state or locality may have in place, by requiring him to request a hearing prior to termination," but ultimately excused plaintiff from this requirement because "it [was] apparent to the Court that [plaintiff] was not afforded sufficient time to make such a request.").

Here, as in *Dwyer*, Ms. Pulaski asserts that her termination was pretextual. However, there is no evidence whatsoever that she ever requested a pretermination hearing or informed the School Board that she thought that the reason for her termination was pretextual. Ms. Pulaski's counsel admitted as much at oral argument. While it is undoubtedly true that an employee need not use any "magic words" in requesting a pretermination hearing, under *Dwyer* the employee surely cannot complain of the failure to provide a pretermination hearing unless the employee sought one in some way. In this case, Ms. Pulaski merely asked who would be doing her work and requested to meet with Superintendent Cornish. That request was granted, but during the meeting with Superintendent Cornish – during which Ms. Pulaski was told that her position was being eliminated due to budgetary reasons – Ms. Pulaski neither sought a pretermination hearing nor raised any concerns that the reason for her layoff might be pretextual. *See, e.g.*, Pulaski Deposition [doc. # 29-3] at 24 ("Q. Did you ever request any kind of hearing on the elimination of your job from anyone employed by the Stratford Board of Education? . . . A. Not really other than my conversation with Irene [Cornish] the next day."); Affidavit of Irene Cornish [doc. # 29] ¶ 21 ("To my knowledge, the plaintiff never requested

7

a hearing regarding the elimination of her job position or the termination of her employment prior to June 30, 2004, the date the funding for her position ended and she was laid off.").

Thus, on the undisputed record, the School Board gave Ms. Pulaski notice of her termination and the reason for it. Ms. Pulaski thus had an adequate opportunity to request a pre-termination hearing on her claim of pretext, but she never did so. As the Second Circuit stated in *Dwyer*, if "an employee who has received notice that his position is to be eliminated protests that notice and contends that it is but a sham and pretext . . ., the state *must be prepared to grant* the employee some kind of hearing prior to the termination of his employment." *Dwyer*, 777 F.2d at 833 (emphasis added). Here, the School Board can hardly be faulted for failing to give Ms. Pulaski a pretermination hearing on a claims of pretext when she never protested the notice of her termination, never told Superintendent Cornish or anyone else that the stated reason for her termination was a sham and pretext and asked for a pretermination hearing of any kind. Accordingly, under the plain language of *Dwyer*,[1] Ms. Pulaski is not entitled to recover under the Due Process Clause for the School Board's failure to provide her a pretermination hearing.

**Posttermination Hearing.**   *Dwyer* also controls Ms. Pulaski's complaint that she was unconstitutionally deprived of a posttermination hearing. *See Dwyer*, 777 F.2d at 833-35. As the Second Circuit explained, even when a state employee who has a protected property interest in her job fails to request a pretermination hearing, she is still entitled to a posttermination hearing. *Id.* at

---

[1] At argument on the motion, counsel for Ms. Pulaski argued that *Dwyer* was wrongly decided, an argument that counsel is free to raise in the Second Circuit. *Dwyer* continues to be cited by the Second Circuit, *see, e.g.*, *New Windsor Volunteer Ambulance Corps., Inc v. Meyers*, 442 F.3d 101, 116 (2d Cir. 2006)**,** and therefore so far as this Court is concerned, *Dwyer* remains the governing law in this circuit until the Second Circuit declares otherwise.

834 ("[E]ven if Dwyer did not timely demand pretermination hearing, he was nevertheless entitled to a posttermination hearing *on his contention* that he was impermissibly deprived of his property right.") (emphasis added).  Indeed, the *Dwyer* court observed that "[t]he nature of a claim of sham is such that a posttermination hearing will likely be more valuable to the claimant than a pretermination hearing, since an after-the-fact transfer of the claimant's duties to a new employee would provide evidence in support of the claim of sham." *Id.*  Of course, this statement from the Second Circuit presupposes that the employee has raised the issue of pretext, which is, after all, what triggers the employer's obligation to hold a hearing when jobs are eliminated in the context of a reorganization.

In addition, the Second Circuit in *Dwyer* went on to hold that the availability of state court proceedings will satisfy the Due Process Clause's posttermination hearing requirement unless the employee can show that "he could not have obtained a full and fair posttermination adjudication of his claims in the state courts." *Id.*[2]  The Second Circuit thus instructed that "[i]f no pretermination hearing was requested and if a state court proceeding would have been adequate, the complaint should be dismissed." *Id.*  Moreover, the onus of initiating any posttermination proceeding is with

---

[2] Ms. Pulaski places much reliance on the Seventh Circuit's decision in *Baird v. Board of Education for Warren Community Unit School District No. 205*, 389 F.3d 685 (7th Cir. 2004).  That case dealt with the question of "whether a state breach of contract suit provides due process if the pre-deprivation hearing does not." *Id.* at 689.  In *Baird*, the plaintiff had been given a bare, inadequate pretermination hearing with no posttermination remedy except for a state breach of contract suit.  *Baird* is easily distinguishable from the case at bar in two respects: (1) Ms. Pulaski did not submit the needed request to invoke her right to a pretermination hearing, thus no such hearing occurred and no right to such a hearing arose, and (2) Ms. Pulaski, as discussed below, had recourse to the State Mediation Board for a hearing which, as admitted by her counsel at oral argument, would comport with due process.  Therefore, whether a posttermination lawsuit alone provides due process when a plaintiff had established an entitlement to a hearing is not at issue here.

9

the employee: "even if state court proceedings are shown to have been inadequate, if [plaintiff] made no request for either a pretermination hearing or an administrative posttermination hearing, the complaint should be dismissed." *Id.* at 834-35. On the undisputed record, it is clear that Ms. Pulaski cannot satisfy any of the requirements that *Dwyer* imposed on employees seeking recovery for failure to provide a posttermination hearing.

Ms. Pulaski herself asserts in her complaint and brief that, even though she was a non-union employee, she was entitled to avail herself of the state administrative procedures set forth in the collective bargaining agreement between the School Board and the Stratford Association of Educational Secretaries. *See, e.g.*, Complaint [doc. # 1] ¶ 15 ("[I]t has been the official and long-term policy of the defendant . . . to accord the plaintiff, and similarly situated non-union personnel, the same privileges and benefits that are enjoyed by members of the [union]."); *id.* ¶ 27 ("[T]he [defendant] was . . . bound to provide the plaintiff with notice and a hearing pursuant to the terms of the collective bargaining agreement between the defendant . . . and [the union]."); Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [doc. # 33] at 2 (noting that plaintiff was told that "the terms and conditions of [her] employment would be governed by the collective bargaining agreement between the Stratford Board of Education and the Stratford Association of Educational Secretaries"); Pulaski Deposition [doc. # 29-3] at 29 ("Q. Based upon your conversation with Mr. O'Donahue when you were hired, it was your understanding that the terms of your employment followed the Clerical Collective Bargaining Agreement, correct? A. Yes."). The statements in her pleadings (which are not set forth in the manner of alternative pleading) constitute judicial admissions. *See, e.g.*, *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact."); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523,

528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.").

Therefore, Ms. Pulaski admits that she knew that the terms of the collective bargaining agreement applied to her, and she also knew that the agreement contained a grievance procedure, which she failed to employ. *See* Pulaski Deposition [doc. # 29-3] at 2-30 ("Q. Were you aware that the Collective Bargaining Agreement . . . contained a grievance and arbitration provision? A. I know there was a grievance procedure. Q. Was it your understanding . . . that the grievance procedure provisions applied to you? A. Again, he handed me the contract and said that I followed the secretarial contract."). The collective bargaining agreement provides for a detailed grievance procedure, and state law provides for a detailed hearing process. *See* Conn. Gen. Stat. §§ 31-97, 52-413; Pl.'s Ex. 5 [doc. # 33] Art. 4 – Grievance and Arbitration Procedure. Wisely, Ms. Pulaski makes no claim that this state-administered grievance procedure is inadequate or otherwise fails to satisfy the requirements of the Due Process Clause. *See, e.g., Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 213 (2d Cir. 2003) ("Courts have held that such post-deprivation procedures, providing for a hearing to contest a challenged employment decision, are sufficient to satisfy due process."); *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 102 (1st Cir. 2002) ("[T]he full arbitration hearing afforded by the collective-bargaining agreement was more than sufficient to satisfy" due process).

Instead, Ms. Pulaski asserts that under Connecticut law, the services of the Connecticut Board of Mediation and Arbitration ("State Mediation Board") – the entity that is charged with arbitrating employee disputes under the collective bargaining agreement – are simply not available when the employee is a non-union employee. Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [doc.

11

# 33] at 29. Ms. Pulaski argues that Connecticut General Statutes § 7-472 limits the State Mediation Board's jurisdiction to accepting arbitration requests only from employers and unions, not employers and individual employees. *See* Conn. Gen. Stats. § 7-472(a) ("The services of the State Board of Mediation and Arbitration shall be available to municipal employers and employee organizations for purposes of mediation of grievances . . . and for purposes of arbitration of disputes over the interpretation or application of the terms of a written agreement . . . ."). Ms. Pulaski argues that the State Mediation Board also interprets its own jurisdiction as limited to arbitrating disputes between employers and unions. *See* Conn. Agencies Regs. § 31-91-26 ("The arbitration services of the board are available to employers and employee organizations.").

At argument, the parties agreed jointly to ask the State Mediation Board whether its regulations prevent an employer from submitting to the State Mediation Board a dispute involving a non-union employee. On July 12, 2006, the State Mediation Board responded to the parties' jointly-prepared request for an opinion, which asked whether the State Mediation Board would have jurisdiction in an assumed factual situation that was in conformity with Ms. Pulaski's claims at bar and that was jointly drafted by the parties. The July 12 response included an opinion prepared by the Connecticut Attorney General's Office. *See* Exhibit A to Def.'s Supp. Brief in Support of Mot. For Summ. Judg. [doc. # 47-2]. That opinion states that if the School Board had agreed with its non-union personnel to extend to them the provisions of the union's collective bargaining agreement – as Ms. Pulaski asserts in this case – the State Mediation Board would have jurisdiction to entertain a dispute between a non-union employee and the School Board. The Attorney General based his opinion upon the language of Connecticut General Statutes § 31-97(a), bolstered by the application of § 7-472. *See* Conn. Gen. Stats. § 31-97(a) ("Whenever a grievance or dispute arises between an

employer and his employees, the parties may submit the same directly to [the State Mediation Board]."). Ms. Pulaski disputes the opinion of the State Mediation Board and the Attorney General regarding the proper interpretation of the Mediation Board's own regulations and jurisdiction. *See* Pl.'s Supp. Mem. In Opp. To Def.'s Mot. For Summ. Judg. [doc. # 48]; Pl.'s Submission Re Supp. Mem. In Opp. To Def.'s Mot. For Summ. Judg. [doc. # 49] .[3]

No Connecticut court has ruled on the issue of whether the State Mediation Board has jurisdiction to arbitrate between a municipal employer and an individual, non-union employee. Three cases decided by the Connecticut Supreme Court, however, lead this Court to concur with the opinion of the state Attorney General. In *Board of Police Comm'rs. of the City of New Haven v. Maher*, 171 Conn. 613 (1976), the Connecticut Supreme Court held that the City of New Haven and the union of police officers could extend by contract the jurisdiction of the State Mediation Board to cover a type of arbitration that was not otherwise authorized by the statute. *Id.* at 617-21 ("The limits of authority [to arbitrate] are set by the provisions of the bargaining agreement . . . ."). In *Danbury Rubber Co. v. Local 402, United Rubber, Cork, Linoleum and Plastic Workers of America, C.I.O.*, 145 Conn. 53 (1958), the Connecticut Supreme Court held that the statutory provisions enclosed in Chapter 369 (now Chapter 31) of the General Statutes "provides a complete procedure

---

[3] Ms. Pulaski also argues that the School Board had an affirmative obligation to inform her of her right to seek a posttermination hearing. However, Ms. Pulaski cites no case holding that in the context of a reduction in force, the employer must inform the employee that she has a right to seek a hearing on the reduction in force. *Dwyer* itself indicates otherwise: "If no pretermination hearing was requested and if a state court proceeding . . . would have been inadequate, then Dwyer was entitled, upon request, to an administrative posttermination hearing on his claim of sham abolition. . . . *[I]f he can show that he requested and was denied such a hearing*, he will be entitled . . . to recover for that denial." *Dwyer*, 777 F.2d at 834 (emphasis added). In fact, Ms. Pulaski *had no right to a hearing* unless and until she informed the School Board that she believed that the stated reason for ending her employment was pretextual.

up to the making of a decision by the [State Mediation Board]." *Id.* at 57. That court ultimately concluded, in deciding which of conflicting statutory directives to apply to the State Mediation Board, that "the board should be governed by the specific legislation enacted for its guidance and not by general legislation pertaining to arbitration." *Id.* at 58. Here, the Connecticut statutes pertaining to the jurisdiction of the State Mediation Board provide that it may hear disputes arising between an employer and its employees. *See* Conn. Gen. Stats. § 31-97(a). Finally, in *City of Milford v. Local 1566, Council 4, AFSCME*, 200 Conn. 91 (1986), the Supreme Court held that "[t]he [State Mediation Board] members are independently authorized under General Statutes §§ 31-91 through 31-100 to arbitrate labor disputes and render awards," *id.* at 101, and that the failure of some board members to take an oath in accordance with another statutory directive dealing with arbitration did not rob the State Mediation Board of its jurisdiction in the affected matters, *id.* at 102. *See also id.* at 97 (stating, in the context of a municipal employment dispute, that the State Mediation Board's authority to arbitrate derives from § 31-97, not § 7-472).

In *Danbury Rubber Co.* and *City of Milford*, the Connecticut Supreme Court harmonized the language in two seemingly-conflicting statutory sections, assuming that "in enacting [the later provision], the legislature was cognizant of existing law, including §§ 31-91 through 31-100 . . . ." *City of Milford*, 200 Conn. at 100; *see also Danbury Rubber Co.*, 145 Conn. at 58 ("In considering the intended operation of a statute, courts must presume that the legislature in enacting it had existing relevant legislation in mind."). This Court similarly presumes that the Connecticut legislature had in mind the authority given by § 31-97 to the State Mediation Board to hear disputes between employers and employees, and intended § 7-472 to designate the State Mediation Board as the arbiter

of those disputes.[4]  Finally, the Court notes that the collective bargaining contract specifically designated the State Mediation Board as the arbiter of disputes over contractual language, a category that encompasses the present issue. In short, the interpretation of the State Mediation Board and the Connecticut Attorney General appears to be reasonable and consistent with state law. Certainly, Ms. Pulaski cites nothing that would cause this Court to reject the interpretation of state law by the State Mediation Board and the Connecticut Attorney General.

Therefore, on the basis of the admissions in her pleadings, testimony at her deposition, and the opinions of the State Mediation Board and Attorney General, as well as its own analysis of Connecticut law, the Court concludes that Ms. Pulaski understood at the time of her termination that she could avail herself of the grievance provisions of the collective bargaining agreement if she wished to dispute her termination and that her status as a non-union employee would not have deprived the State Mediation Board of jurisdiction to hear her case if, as she asserts, the School Board had extended the collective bargaining agreement to non-union employees.[5]  Nevertheless, Ms. Pulaski never sought to avail herself of the posttermination administrative procedures that she asserts were available to her. Once again, it is difficult to see how the School Board should be

---

[4] Additionally, the Court points to another section of the State Mediation Board's regulations, which states that the Board "provides employers and employee organizations with mediators for the purposes of settlement of grievances or mediation of impasses in contract negotiations. It also makes available arbitration services for the purpose of arbitration of disputes over the interpretation or application of the terms of written collective agreements . . . ." Conn. Agencies Regs. § 31-91-2(b). The regulation does not limit its offer of dispute arbitration only to employers and employee organizations.

[5] Since Ms. Pulaski has argued – and the Court must therefore assume to be true in this motion for summary judgment – that the collective bargaining agreement applied to her, the alleged injury to her cognizable interest must be assessed in light of the procedural protections available. Had the collective bargaining agreement not applied to her in the first place, she would have no cognizable property interest on which to base a claim of injury.

blamed for failing to make available to Ms. Pulaski posttermination procedures that she never sought to invoke. Accordingly, as *Dwyer* instructs, because Ms. Pulaski "made no request for either a pretermination hearing or an administrative posttermination hearing, the complaint should be dismissed." *Dwyer*, 777 F.2d at 834-35.

### IV.

As a result of the Court's rulings on Ms. Pulaski's due process claim, she is left with a single claim, Count Two, which is a state-law breach of contract claim. While it is true that the Court may exercise supplemental jurisdiction over Ms. Pulaski's state-law claim under 28 U.S.C. § 1367, the Second Circuit has advised district courts that " 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.' " *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). This is the "usual case" envisioned in *Valencia*. All that remains in this case is a single state law claim. Therefore, in the interests of judicial economy, convenience, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Count Two.

### V.

In sum, the Court GRANTS Defendant's Motion for Summary Judgment [doc. # 29]. The Court directs the Clerk to: (1) enter judgment for Defendant and against Plaintiff on Count One of the Complaint, which alleges a due process violation; and (2) dismiss for lack of jurisdiction Count

Two of the Complaint, which alleges a breach of contract.  Plaintiff shall be free to re-file her state-law claim in state court.  Each side shall bear its own costs and attorneys' fees.  **The Clerk is directed to close this file.**

                    IT IS SO ORDERED.


               /s/     Mark R. Kravitz
                  United States District Judge


Dated at New Haven, Connecticut: **August 15, 2006**.